**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL ACTION FILE** |
| **KEVIN M. SULLIVAN,** | **NO. 1:15-CR-290-MHC-CMS** |
| **Defendant.** | |

**ORDER**

This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Catherine M. Salinas [Doc. 51] recommending that Defendant's Motion to Suppress [Doc. 26] and Particularized Motion to Suppress [Doc. 33] be denied. The Order for Service of the R&R [Doc. 45] provided notice that, in accordance with 28 U.S.C. § 636(b)(1) (2012), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. After obtaining an extension of time within which to file his objections, Defendant filed his objections to the R&R [Doc. 51] ("Def.'s Objs.") on June 16, 2016.

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings

or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1), and may accept the or recommendation if it is not clearly erroneous of contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendant objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

Defendant makes the following two objections: (1) the search warrant obtained from the Superior Court of DeKalb County, Georgia did not authorize the use of the so-called sniffer device, and (2) agents exceeded the authority contained

in the search warrant by searching Defendant's office at Emory University's Claudia Nance Rollins Building without obtaining a second search warrant to search that office. Def.'s Objs. at 5. These objections will be reviewed by this Court *seriatim* after the discussion of the facts that preceded the challenged search.

## I. The Search Warrant and its Execution

Defendant's indictment arose from an investigation in Switzerland where a computer that was seized from a suspect's residence identified a website where child pornography was being downloaded. Tr. of Mot. to Suppress Hr'g, Feb. 22, 2016 [Doc. 38] ("Tr.") at 13. The website revealed a number of internet protocol ("IP") addresses that were involved in downloading child pornography from the website; the IP addresses are assigned by the internet service provider and reveal the location of the devices. Id. at 13-14. All of the IP addresses associated with the website in the United States were sent to the Homeland Security Investigations ("HSI") Cyber Crimes Center. Id. at 12-13. One of those IP addresses originated from Emory University in Atlanta, Georgia ("Emory"). Id. at 13-14.

With Emory's cooperation, the IP address led investigators to a public wireless network within the Claudia Nance Rollins Building ("Rollins Building"), as well as a Media Access Control ("MAC") address of the device that was using the IP address to download the child pornography, "68:a3:c4:e2:6a:7e," and the

device name, "Kev-HP." Id. at 14-16; Search Warrant [Doc. 33-1] at 5.[1] However, at that point in the investigation, agents only could determine that an individual with the MAC address of "Kev-HP" was using the wireless internet to download child pornography somewhere within the Rollins Building but did not know the floor or room where the device was operating. Id. at 16.

Special Agent Thomas was informed of a device called a "sniffer" that could be used to limit the search and identify the location of the area where the device contained the MAC address was operating. Id. Special Agent Thomas described the "sniffer" as follows: "Just like a dog sniffs out for a certain smell, this device sniffs out for certain packets being transmitted from a device to the wireless network. [The packets are b]its of information that are being sent between devices and between the internet network."[2] Id. at 17-18. For a sniffer to work, the device must be turned on and connected to a wireless or internet network. Id. at 19.

---

[1] Sara Thomas, a special agent with the Georgia Bureau of Investigation and a task force agent with HSI, testified that "an IP address is like a phone number that a phone company assigned; whereas the MAC address is like the phone. . . . An IP address stays within a location. . . . And a MAC address is specific to a device. So if you would take that device to different areas it would have different IP addresses because it's in different locations but it would be the same because it's the same device." Tr. 14-15.

[2] See also United States v. Marchand, 308 F. Supp. 2d 498, 500 n.2 (D.N.J. 2004) ("A sniffer is a device that monitors internet traffic across a firewall and generates alerts based on packets of information or key words that cross the firewall.").

On June 5, 2015, Special Agent Thomas applied for a search warrant in order to authorize the use of a sniffer device "to identify the wireless device associated with the suspect MAC address, "68:a3:c4:e2:6a:7e" in Emory's Rollins Building. Search Warrant at 9.[3] The warrant discussed in great detail the background child pornography investigation in Switzerland, the obtaining of both the IP and MAC addresses which led investigators to the Rollins Building, and the kinds of information that were being downloaded by the MAC address. Id. at 5-16. The actual search warrant described the place to be searched as "Emory University's Claudia Nance Rollins Building, School of Public Health, 401 Rollins Way in Atlanta, DeKalb County, Georgia" and the items to be searched to include a wireless device containing the MAC address "68:a3:c4:e2:6a:7e" in addition to computers, media, cell phones, and digital communications that can be used to download child pornography. Id. at 1-2.

On June 9, 2015, investigators met with an Emory information technology ("IT") specialist and confirmed the name of the device was "Kev-HP" and that there were three persons employed as Emory faculty members named "Kevin,"

---

[3] The Search Warrant in this case consists of fifteen pages. The first two pages are the actual warrant that is left with the person where the warrant is executed. The second thirteen pages encompass the application and affidavit for the warrant. Both parts are signed by the state court judge, and the actual warrant is "[b]ased upon the affidavit" that is attached to the warrant itself. Tr. 56-58.

including Defendant, the only one of the three who worked in the Rollins Building. Tr. 20-21, 37-39. The IT specialist further explained that the device had accessed the wireless network at certain access points in the Rollins Building, including the floor below Defendant's office and at a point next to that office on the third floor. Id. at 21, 37, 51. The IT specialist further advised that the device had not accessed the wireless network that day and that Defendant was on leave for the entire week. Id. at 21. Because the device was not being used, the search warrant was not executed that day. Id. at 21-22. At the conclusion of the week, the IT specialist confirmed that the device had not accessed the network for the entire week. Id. at 21. Nevertheless, without operating the sniffer device, Special Agent Thomas could not be sure that Defendant was the person with the device that had earlier accessed the wireless network because the access points were open areas that could be used by other faculty or students. Id. at 39-40, 51-52.

On June 15, 2015, Special Agent Thomas was informed by Emory personnel that the device was using the wireless network. Id. at 23. Thereafter, investigators proceeded to the Rollins Building where two sniffer devices were utilized, one on the second floor and one on the fourth floor, but no readings were reported. Id. at 23-24. The agents then met on the third floor, where readings were obtained by

one of the sniffers. Id. at 24. The strongest reading came outside Defendant's office. Id. at 26.

Special Agent Thomas knocked on the door to Defendant's office, "heard a bang and a click," and a male voice asked who it was. Id. Thomas said, "Mr. Sullivan, I need to speak with you," and Defendant opened the door slightly. Id. at 27. Thomas introduced herself and a colleague as special agents with the Georgia Bureau of Investigation, Defendant asked if he was under arrest, and Thomas replied no and that they were executing a search warrant and wanted to speak with him. Id. Defendant exited his office and went with Thomas to another room, but invoked his Miranda right to speak with an attorney. Id. at 28. Other investigators then conducted a search of Defendant's office and collected evidence, including two laptop computers, a desktop computer, a cell phone, an external hard drive, and several flash drives. Id. at 28-29.

Prior to obtaining the search warrant, Special Agent Thomas sought advice from attorneys at both the Department of Homeland Security and Emory as to whether a second search warrant was needed to cover the devices in Defendant's office but was informed that a second warrant would not be necessary. Id. at 59-61. According to Thomas, the first warrant application did not narrow down a more specific location because "we didn't know if it would be a student with a

backpack; we didn't know if it was an office. We had no idea where that device was going to be, which is why the sniffer was used." Id. at 47-48.

## II. The Magistrate Judge Did Not Err By Concluding That the Search Warrant Authorized a Search Through Use of a Sniffer Device.

Defendant first objects to the Magistrate Judge's conclusion that the search warrant authorized a search using the sniffer device. Def.'s Objs. at 5-9. According to Defendant's argument, the warrant's authorization of the search of the Rollins Building in its entirety made no mention of the use of a sniffer device, and either a separate warrant was needed to permit the use of the sniffer in the Rollins Building or the face of the warrant needed more specification.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The requirement for particularity "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987). "This requirement is aimed at preventing 'general, exploratory rummaging in a person's belongings.'" United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). "[E]laborate specificity is unnecessary. The description is considered

sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be searched. . . . The standard is one of practical accuracy rather than technical nicety." United States v. Betancourt, 734 F.2d 750, 754-55 (11th Cir. 1984) (internal quotation marks and citations omitted).

The face of the search warrant describes the place to be searched as the entire Rollins Building, but it is based upon Special Agent Thomas' attached affidavit which specifically states that, "[d]uring the execution of this search warrant, a sniffer device will be used during to identify the wireless device associated with the suspect MAC address, '68:a3:c4:e2:6a:7e', that has been identified in this investigation." Search Warrant at 9. In considering whether a search warrant is overbroad, the Eleventh Circuit has held that "[w]hen affidavits are attached to a warrant, we will consider the affiant's statements in determining whether the warrant sufficiently identifies the crimes that were allegedly committed." United States v. Martinelli, 454 F.3d 1300, 1308 (11th Cir. 2006). Indeed, "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." Groh v. Ramirez, 540 U.S. 551, 557 (2004); see also United States v. Weinstein, 762 F.2d 1522, 1532 (11th Cir. 1985) ("[A]n affidavit incorporated into

a warrant by express reference and attached to and accompanying the warrant can cure ambiguity in the warrant itself."); Wuagneux, 683 F.2d at 1352 n.6 (holding that an affidavit that was not attached to warrant was sufficiently particular and the agent who generated the affidavit was physically present at the search to explain its contents); United States v. Thompson, 495 F.2d 165, 170 (D.C. Cir. 1974) ("We have previously construed the terms of a warrant by reference to the underlying circumstances disclosed in the accompanying affidavit").

The Court has reviewed the application attached to and submitted in support of the search warrant and finds that it specifically provides for the use of the sniffer device to identity the wireless device with the suspect MAC address "68:a3:c4:e2:6a:7e". Defendant's cited cases are inapposite.

In Florida v. Jardines, 133 S. Ct. 1409, 1417 (2013), the Supreme Court held that the use of a drug-sniffing dog on a homeowner's porch to investigate the presence of drugs in the home is a search that required a warrant. In Jardines, the warrant was not obtained until after the dog sniffed out the drugs. Id. at 1413. In the instant case, the warrant was obtained to use the sniffer before the search. The same analysis applies to United States v. Whitaker, 820 F.3d 849, 853-54 (7th Cir. 2016), where a police dog was brought to sniff for drugs outside an apartment door and the search warrant was obtained only after the sniffing was complete.

In Kyllo v. United States, 533 U.S. 27, 29-30 (2001), agents conducted a warrantless search of the defendant's home using a thermal imager to scan the building for suspected marijuana, and obtained a search warrant thereafter based upon the images from the scanner. The Court held that "[w]here . . . the government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." Id. at 40. Once again, the sniffer was utilized in the instant case after the warrant was issued, so Kyllo is inapplicable.

Consequently, Defendant's objection that the search warrant did not authorize a search using the sniffer device is **OVERRULED**.

## III. The Magistrate Judge Did Not Err By Concluding That The Agents Exceeded Their Authority By Searching Defendant's Office Without Obtaining a Second Search Warrant.

Defendant, again relying upon Jardines and Kyllo, argues that, once the sniffer revealed the location of the MAC device as his office, agents were required to obtain a second search warrant for his private office. Def.'s Objs. at 9-14.

First, there is nothing in either Jardines or Kyllo that would require a second search warrant in all cases where a search through a sniffer or thermal imaging device is accomplished pursuant to a valid warrant to begin with. In both of those

cases, the Court was considering the propriety of a search warrant that was premised upon an earlier illegal warrantless search using those devices. Unlike the situation in either Jardines or Kyllo, Special Agent Thomas actually obtained a search warrant to use the sniffer device.

Second, the search warrant's reference to a detailed list of property and things to be seized in the Rollins Building was sufficiently particular to permit a search of Defendant's office once the sniffer device reported a strong reading outside his office. The Eleventh Circuit has approved searches of interior office space in situations when a search warrant authorizes the search of a building. For example, in United States v. Bradley, 644 F.3d 1213 (11th Cir. 2011), agents procured a warrant to search "the premises located known as 6356 Manor Lane, Miami, Florida" which had a glass entrance door "identif[ying] the one-story building as SERATECH"; however, the building actually housed four separate entities. Id. at 1266. Agents had a locksmith open the door to the defendant's private office and removed a hard drive that was later introduced into evidence at his trial. Id. The defendant contended that the agents should have obtained a second warrant before searching his private office. Id. The Eleventh Circuit disagreed, stating that the warrant "did not restrict the agents' search to the premises known as or controlled by Seratech. Instead, the warrant permitted the

search of the *entire building* so long as the agents reasonably believed they would find "Items to be seized" in the location of their search." Id. (emphasis in original). See also United States v. Aguirre, 368 F. App'x 979, 988-9 (11th Cir. 2010) (holding that agents did not exceed scope of warrant for corporate business office by searching the defendant's personal office).

A warrant is sufficient where it describes "the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." United States v. Burke, 784 F.2d 1090, 1092 (11th Cir. 1986). The particularity requirement allows a practical margin of flexibility, depending on the type of property to be seized, and "a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." Wuagneux, 683 F.2d at 1349. Here, the warrant contained a detailed list of computer software, devices, media, and records to enable the searcher to identify the property to be seized. Moreover, the affidavit stated that the sniffer device would be used to identify the specific MAC device that was alleged to be downloading child pornography. As in Bradley, the warrant here permitted the search of offices in the entire Rollins Building without a second warrant as long as agents reasonably believed they would find the property listed in the search

warrant at a specific location in the building. Once the sniffer device identified Defendant's office as the likely location, the search was properly conducted in accordance with the original warrant.

Defendant critiques the Magistrate Judge's reliance upon United States v. Rousseau, 628 F. App'x 1022 (11th Cir. 2012), because there was no entry of a private office in that case. Def.'s Objs. at 13. In Rousseau, an investigation identified a computer assigned to a Miami fire station that was sharing files containing child pornography. Id. at 1024. The Eleventh Circuit rejected the defendant's claim that the warrant, which described the place to be searched as the address of the fire station, was overbroad.

> The warrant sufficiently described the places to be searched as the Station—including the address and a description of the building—and any "computers" and "data storage devices" found in the Station. The warrant further contained a very detailed list of the items to be seized, including visual depictions of child pornography.

Id. at 1026. What is important is not that the defendant in Rousseau had no private office, it is that "[u]nder the circumstances, the warrant was as specific as it could be and it was not feasible for the agents to identify ahead of time a particular computer or storage device inside the Station to be seized and searched." Id. at 1027. Similarly, in this case, until the sniffer located the MAC device in Defendant's office, it was not feasible for the agents to identify that office in the

warrant. In addition, because the items to be searched were described in great detail, once the sniffer device narrowed the scope of the search to Defendant's office (which was the sniffer's purpose in accordance with the affidavit attached to the warrant), there was no requirement for the agents to obtain a second warrant prior to entering that office.

Therefore, Defendant's objection that a second warrant was required prior to the search of his office is **OVERRULED.**[4]

## IV. CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Defendant objects, the Court **OVERRULES** his objections [Doc. 51]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 44] as the Opinion and Order of the Court.

[4] Defendant's objection to the Magistrate Judge's alternative application of the good faith exception under United States v. Leon, 468 U.S. 897 (1984) (Def.'s Objs. at 15-17), is also **OVERRULED** because the objection is based on Defendant's earlier contentions that the warrant did not authorize the use of the sniffer device and that a second warrant was necessary to search Defendant's offices, both of which have been rejected above. In addition, Defendant's argument that no exigent circumstances existed to justify a warrantless search of his office (Def.'s Objs. at 14-15) was in fact adopted by the Magistrate Judge. R&R at 10 n.2. Finally, because the matter has been fully briefed by Defendant and the issues are not complex, the Court does not find it necessary to schedule oral argument on the objections.

It is hereby **ORDERED** that Defendant's Motion to Suppress [Doc. 26] and Particularized Motion to Suppress [Doc. 33] are **DENIED.**

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendant ready for trial on May 25, 2016, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant's objections to the Report and Recommendation outweigh the right of the public and the right of the defendant to a speedy trial, pursuant to 18 U.S.C. § 3161, *et seq*.

**IT IS SO ORDERED** this 12th day of July, 2016.

MARK H. COHEN
United States District Judge